WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Zur,<br><br>              Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>              Defendant. | No. CV-15-01821-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Daniel Zur ("Zur"), which challenges the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, this Court remands the case for further administrative proceedings.

## BACKGROUND

On May 30, 2013, Daniel Zur filed an application for disability insurance benefits, alleging a disability onset date of May 1, 2012. (Tr. 70, 72.) His claim was initially denied on October 23, 2013, and it was denied again upon reconsideration on March 19, 2014. (Tr. 83, 118.) Zur then filed a written request for a hearing, and he testified before ALJ Thomas Cheffins on March 19, 2015. (Tr. 11.) On April 16, 2015, the ALJ issued a decision finding Zur not disabled. (Tr. 11–20.)

In evaluating whether Zur was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 12.) At step one, the ALJ found that Zur had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13.) At step two, the ALJ determined that Zur suffered from the following severe impairments: obesity, hypertension, and gout. (Tr. 13–14.) He also found that Zur suffered from nonsevere impairments, including autoimmune disorder, hyperalimentation, Crohn's disease, back pain, acid reflux, chronic renal disease, bipolar disorder, and PTSD. (Tr. 14.) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ reached step four and made a determination of Zur's residual functional capacity ("RFC"),[2] concluding that Zur could "perform light work as defined in 20 CFR 404.1567(b), with no climbing ladders, ropes or scaffolds, frequent climbing ramps and stairs, and frequent crouching, kneeling and crawling." (Tr. 14–15.) In making this finding, the ALJ found that Zur's subjective testimony was "not entirely

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

- 2 -

credible." (Tr. 15.) The ALJ gave little to no weight to the treating physicians, Drs. Merritt, Cohen, and Quershi. (Tr. 15–20.) He also gave little weight to Dr. Geary, an examining physician. (Tr. 19.) Instead, he relied on the testimony of state agency's reviewing physicians. (*Id.*) Likewise, the ALJ rejected the testimony of Zur's licensed social worker/physician assistant, Ms. Monachelli. (Tr. 19.)

The Appeals Council declined to review the decision. (Tr. 1–5.) Zur filed the complaint underlying this action on September 9, 2015, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter is now fully briefed before this Court. (Doc. 14, 15, 19.)

## ANALYSIS

### I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

/ / /

## II. Analysis

### A. The ALJ Erred In Rejecting the Treating Physicians' Testimony

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Therefore, if a treating physician's opinion is "not contradicted by another doctor, it may be rejected only for clear and convincing reasons." *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner still cannot reject the treating physician's opinion unless he provides "specific and legitimate reasons supported by substantial evidence in the record." *Id.* (internal quotations omitted).

The ALJ erred in rejecting the testimony of treating physicians Drs. Merritt, Qureshi, and Cohen without sufficiently explained reason for doing so.

### 1. Dr. Brock Merritt

Dr. Merritt was Zur's primary care physician for over eight years. (Tr. 49.) Dr. Merritt examined Zur on four separate occasions. In May of 2012 Dr. Merritt opined that Zur "does not qualify for any physical problems for disability, but may at least partially qualify through psychiatry," and from fall of 2013 to winter 2014, Dr. Merritt found that Zur could not maintain a full-time job due to his illnesses, specifically due to his Crohn's disease and his bipolar disorder. (Tr. 697–98, 888–90, 1005–6, 1248–49, 1250–52.) The ALJ gave Dr. Merritt's opinion no weight because he claimed that it was "completely unsupported by the record," relied too heavily on the claimant's subjective testimony and was beyond the scope of a primary care physician. (Tr. 19.) The ALJ went on to note that Dr. Merritt's opinion was contradicted by his internal opinions as well as the state agency's reviewing and consulting opinions, and objective test records.

The ALJ did not provide "specific and legitimate reasons supported by substantial evidence in the record" to justify disregarding Dr. Merritt's testimony, and thus he committed legal error. *Lester*, 81 F.3d at 830. Early on in the opinion, the ALJ provided a list of citations to the record to support the assertion that the "[m]ental and physical

exam findings do not support" Zur's allegations. (Tr. 16.) However, the ALJ failed to provide any explanation, parenthetical or otherwise, as to how the cited medical records established inconsistency between Merritt's findings and the objective medical data. The ALJ also did not provide any explanation for declaring that Dr. Merritt's opinions were based on the "claimant's subjective complaints" and that his opinion was "outside the scope of his medical specialty." (Tr. 19.) Furthermore, the ALJ did not adequately support his claim that Dr. Merritt's opinions are internally inconsistent. The ALJ cites to Dr. Merritt's July 2012 opinion that Zur did not qualify for disability to support this claim. (*Id.*) However, this is not, in and of itself, inconsistent with Dr. Merritt's later assertions that Zur did qualify for disability based on physical ailments.[3] (*Id.*) Likewise, the ALJ failed to cite to specific examples establishing that Dr. Merritt's opinion was contradicted by the state agency reviewing and examining physicians, and he did not provide a single example demonstrating how Zur's daily activities contradicted Dr. Merritt's findings. (*Id.*) The ALJ's reasoning was too generalized "to allow the agency's path to be reasonably discerned," and thus he erred. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).

### 2. Dr. Junaid Qureshi

Dr. Qureshi is Zur's treating nephrologist. (Tr. 50.) He has treated Zur for three years, and Zur has seen him every couple of months during this time. (*Id.*) In September of 2014, Dr. Qureshi opined that Zur is precluded from work-related activities due to frequent urination, coupled with nausea and fatigue. (Tr. 1230.) The ALJ dismissed Dr. Qureshi's medical opinion in the same paragraph that he dismissed Dr. Cohen's medical opinion. (Tr. 19.) While the ALJ includes a list of citations to the record, these citations are too generalized to provide any explanation for which aspect of the medical report led

---

[3] It is not apparent that claimant's condition could not deteriorate over more than a year's time. Thus, while Dr. Merritt's 2012 observations might support the ALJ's conclusion that Dr. Merritt's 2013 observations are internally inconsistent with his 2012 observations, it does not, absent further explanation, provide a substantial basis on which to reject Dr. Merritt's opinion, although it may be relevant to determining whether the claimant's alleged onset date is accurate.

1  the ALJ to dismiss Dr. Qureshi's opinion. (Tr. 19.)

2  Generally, "even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (internal citations and quotations omitted). However, the ALJ did not provide any explanation linking the exhibits he listed to his reasoning for dismissing Dr. Qureshi's opinion, and this lack of explanation prevents this Court from finding that the ALJ's logic can be reasonably discerned from his opinion. *Id.* (Tr. 19.) While the Commissioner offers some analysis on the opinion in her briefing, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Therefore, the ALJ's inadequate explanation for dismissing the findings of Dr. Qureshi constituted legal error.

### 3. Dr. Murray Cohen

Dr. Cohen treated Zur for eight years for his gastrointestinal problems. (Tr. 44.) In February of 2015, he opined that Zur's irritable bowel syndrome as well as his kidney dysfunction would limit his ability to work. (Tr. 1379.)

The ALJ rejected Dr. Cohen's opinion because he determined that it was based on the claimant's subjective complaints, and "appeared sympathetic to the claimant." (Tr. 19.) He also stated that the opinion was not supported by "these doctors"[4] own objective clinical and exam findings and it was contradicted by the state agency's examining physicians. (*Id.*) Furthermore, the ALJ stated that Dr. Cohen's opinion was contested with the objective testing of record. (*Id.*) However, as above with both Dr. Merritt's and Dr. Qureshi's opinions, the ALJ failed to explain how the exhibits he listed supported his findings. The ALJ's logic cannot be reasonably discerned from his opinion, and thus he committed error. *Molina*, 674 F.3d at 1121.

---

[4] It is unclear who the ALJ was referring to, but because the paragraph rejecting Dr. Cohen also refers to Dr. Qureshi, the Court assumes he was referring to Dr. Cohen and Dr. Qureshi. (Tr. 19.)

### 4. The ALJ's Error was Prejudicial.

Once it has been determined that an ALJ made an error during the review of a claimant's file, the next step is to determine whether the error was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying the harmless error standard after determining that two of the ALJ's reasons supporting his adverse credibility finding were invalid). Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The general rule is that an error is harmless where a court is can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115.. Furthermore, "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Id.*

The ALJ in this case either discredited or wholly rejected the opinions of the three treating physicians in Zur's case. (Tr. 19.) Given that treating physicians are generally entitled to more weight than state agency reviewing physicians, this Court cannot "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115. Therefore, the ALJ committed prejudicial error by discrediting or entirely rejecting the opinions of Drs. Merritt, Qureshi, and Cohen.

### B. The Commissioner Erred in Weighing the Psychological Findings

The Commissioner gave little weight to examining physician Dr. Geary and no weight to licensed social worker/physician assistant, Ms. Monachelli. For the following reasons, the Court finds that the ALJ erred in rejecting Dr. Geary's findings, but he did not err in rejecting Ms. Monachelli's findings.

#### 1. Dr. Brent Geary

The general rule is that the "opinion of an examining physician is. . .entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* Furthermore, "the

opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and "generally, the more consistent an opinion is with the record as a whole, the more weight" that opinion is given. *Id.* at 830–31.

The ALJ in this case failed to provide an explanation for disregarding Dr. Geary's opinion. To justify the dismissal, he stated that 1) Dr. Geary only examined Zur once and 2) his opinion "found for more than mild limitations in concentration, persistence, and pace, which is otherwise unsupported by the greater objective record." (Tr. 19.) The "opinion of an examining physician is. . .entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Although he only examined Zur once, Dr. Geary still saw him more often than the nonexamining physicians that the ALJ credited over him. Therefore, in the absence of any supportive citation to facts contradicting Dr. Geary's opinion, this is not a legitimate reason for discrediting Dr. Geary's findings.

And, in fact, the ALJ failed to cite to any aspect of the record to support the assertion that Dr. Geary's findings were "otherwise unsupported by the greater objective record," and instead merely cited to Dr. Geary's findings. It is unclear from his analysis if he intended to assert that Dr. Geary's findings were contradicted by the state agency's reviewing physicians or not, but at any rate, this lack of specificity constitutes error. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

This error was not harmless under the standard articulated in *Molina*. Dr. Geary found that Zur had more than mild limitations caused by his psychological conditions. As a physician that examined Zur, his opinion was entitled to more weight than the nonexamining physicians that contradicted him. This Court cannot "conclude from the record that the ALJ would have reached the same result absent the error," and thus the ALJ committed harmful error in rejecting Dr. Geary's opinion. *Molina*, 674 F.3d

at 1115.

### 2. Jane H. Monachelli

Social Security regulations consider physician assistants and mental health counselors as "other sources" of medical evidence. 20 C.F.R. § 404.1513(d). These sources are not entitled to the same deference as "acceptable medical sources," such as licensed physicians or psychologists. *Molina*, 674 F.3d at 1111. Therefore, an ALJ may properly reject the findings of an "other source" of medical evidence as long as the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ rejected Ms. Monachelli's, Zur's licensed social worker and physician assistant, testimony for several reasons, including that it was contradicted by the state agency reviewing physicians. (Tr. 19.) An ALJ may properly credit the opinion of an "acceptable medical source" over that of an "other source." *See Molina*, 674 F.3d at 1111 (upholding an ALJ's decision to credit a licensed psychiatrist's opinion over that of a physician's assistant.) Therefore, the ALJ may have acted within his discretion to properly discredit the testimony of Ms. Monachelli, to the extent that, upon reexamination he still determines that her opinions are inconsistent with those opinions he appropriately credits that are held by an "acceptable medical source."

### C. Rejecting Symptom testimony

If an ALJ finds that a claimant is not malingering, and the claimant "provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). This standard is not met by the ALJ "simply stat[ing] [his] non-credibility conclusion and then summariz[ing] the medical evidence." *Brown-Hunter*, 806 F.3d at 494. Rather, an ALJ must identify which testimony he considers not credible, and "link that testimony to the particular parts of the

record supporting her non-credibility determination." *Id.* The ALJ's opinion "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (internal quotations and citations omitted).

When determining credibility, an ALJ may consider a variety of factors, including: the treatment the claimant sought and received, the type of medication he takes, the measures he's taken to relieve his pain, and the location, duration, frequency, and intensity of his pain. 20 C.F.R. § 404.1529(c)(3). An ALJ may also consider why a claimant left his last place of employment, and "[c]ontinued receipt of unemployment benefits" after the alleged onset date "does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001) (permitting an ALJ to consider the fact that the claimant stated the "he left his job because he was laid off, rather than because he was injured" as a relevant factor in the credibility determination). However, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017.

### 1.  **Specificity of Limitations**

In order to reject a claimant's symptom testimony, the ALJ must "identify specifically which of [the claimant's] statements she found not credible and why," while also providing "sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Brown-Hunter*, 806 F.3d at 493. Here, the ALJ stated that he found Zur's complaints relating to his back pain unreliable because the objective medical evidence did not support the severity of the pain he reported. (Tr. 19.) The ALJ similarly found that Zur's reports of gastrointestinal distress were inconsistent with his colonoscopy labs and other clinical evidence. (*Id.*) The ALJ further noted that while Zur claimed that he suffered from "frequent and/or severe diarrhea and need to use the

restroom," Zur himself admitted that he only wore protective diapers occasionally and had not experienced any weight loss. (*Id.*)  Finally, the ALJ noted that despite Zur's claims that his conditions debilitated him, Zur denied "disabling symptoms and signs on exam." (*Id.*)   Therefore, the ALJ did specifically identify which aspects of Zur's testimony he found to not be credible, and he "link[ed] that testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494.

### 2. Zur's Non-Medical Departure and Receipt of Unemployment Benefits

"It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). However, evidence that the claimant "left his job because he was laid off, rather than because he was injured" can be weighed by an ALJ during the credibility determination. *Bruton*, 268 F.3d at 828. Accepting unemployment benefits after an alleged onset date also "cast[s] doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working."  *Ghanim*, 763 F.3d at 1165.

Zur was fired from his last place of employment for allegedly stealing coffee. He does not allege that he quit due to his symptoms.  The ALJ considered that fact, and found that the "[t]he fact that the claimant's work ended due to nonmedical reasons suggests he could have kept working despite his impairments alleged restrictions and limitations, and is inconsistent with his disability." (Tr. 15.)  This consideration is similar to the reasoning in *Bruton*, and thus the ALJ did not err in considering Zur's reasons for leaving his last place of employment during the credibility analysis.  *Bruton*, 268 F.3d at 828.

The ALJ also found that Zur's receipt of unemployment benefits weighed against his credibility, because "receipt of such benefits is commensurate with being able to work and actively seeking work."  (Tr. 16–17.)  Contrary to Zur's protests, this is in line with

- 11 -

Ninth Circuit jurisprudence. In *Ghanim*, the Ninth Circuit held that continuing to receive unemployment benefits after an alleged onset date does cast doubt on a claim of disability. *Ghanim*, 763 F.3d at 1165. Zur alleged an onset date of May 1, 2012, but he received unemployment benefits between March 2012 and March 2013. (Tr. 11, 16.) Therefore, the ALJ's consideration of his receipt of unemployment benefits was proper.

### 3. Gaps in Treatment and Improvements with Medication

"[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. However, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ discredited Zur's credibility because his treatment for his conditions has been "intermittent." (Tr. 16.) The ALJ cited the fact that he is not currently in formal mental health therapy, that he has no history of psychiatric hospitalizations since his alleged onset date, and the fact that he only spent a total of three months in formal therapy as evidence that his condition is not disabling. (Tr. 16.) He also cited to one instance in June of 2013, where Zur claimed that he did not need to follow up with his treating therapist because "things were going well." (Tr. 16.) As outlined in *Parra*, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d 751. The ALJ's opinion discredited Zur's testimony on the grounds that it appeared to be controlled through conservative means, and thus his consideration of Zur's treatment history was proper.

The ALJ also discredited Zur's testimony because he determined that Zur's prescribed medications improved his condition, and his symptom testimony was inconsistent with the medical record reflecting this improvement. However, Zur's GAF ratings fell from the 80's to the 50's between July 2012 and November 2013. (Tr. 16.) The ALJ supported his statement claiming that Zur improved through medication by citing to a string of moments in the record indicating improvement. (Tr. 16.) However,

- 12 -

"symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. It is therefore improper for an ALJ "to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* The ALJ in this case engaged in cherry picking a few instances from the record illustrating improvement to discredit Zur, and thus erred in considering Zur's improvement with medication in his credibility assessment. However, this error "does not negate the validity of the ALJ's ultimate conclusion that [claimant's] testimony was not credible," and thus it was harmless. *Batson*, 359 F.3d at 1197.

### D.   Remand for Further Administrative Proceedings is the Appropriate Remedy in This Case

Upon a finding that harmful error occurred, a court must then determine what remedy is appropriate. Generally, district courts should remand social security cases "to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal citations and quotations omitted). However, in rare instances, the "credit-as-true rule" applies, and remand for computation of benefits is appropriate. *Id.* at 1100.

For the credit-as-true rule to apply, three conditions must be met. First, the district court must determine whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison*, 759 F.3d at 1020. Second, the court must question whether "the record has been fully developed." *Id.* Notably, "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Finally, the court must also determine that "no outstanding issues remain and further proceedings would not be useful." *Id.* All three of these elements must be met in order for a court to "depart from the ordinary remand rule" and remand for a computation of benefits. *Id.*

As detailed above, this Court finds that the ALJ made harmful errors by rejecting and/or discrediting the medical opinions of treating physicians Drs. Merritt, Qureshi, and Cohen as well as consulting physician Dr. Geary without sufficient explanation. The

- 13 -

only issue remaining is what form of relief is appropriate in this case.

Application of the credit-as-true rule is only appropriate in rare instances, and "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true." *Treichler*, 775 F.3d at 1106.  In this case, while the ALJ cited to specific medical records as justification for his conclusions, he did not adequately explain his conclusions from these medical records sufficient for this court to determine his reasoning and thus to conclude whether or not the claimant has a disability in this case.  Further, as indicated by the ALJ and discussed in the preceding section, evidence in the record calls into question Zur's testimony, and thus there are "inconsistences between the claimant's testimony and the medical evidence in the record" that precludes application of the credit-as-true rule in this case. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citations and quotations omitted).  Therefore, the appropriate remedy in this case is remand for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, this Court finds that the ALJ in this case committed prejudicial error by wholly disregarding or discrediting the testimony of the treating physicians as well as the examining physician, Dr. Geary.

**IT IS THEREFORE ORDERED** that this case be **REMANDED** for further administrative proceedings in accordance with this order.

Dated this 7th day of February, 2017.

_____
Honorable G. Murray Snow
United States District Judge